We'll pick up where we left off, which is United States v. Baker, DACA 23-8042, Council. Good morning again, Your Honors. Leah Yaffe this time for Mr. Rondell Baker. So this case stems from two traffic stops of Mr. Baker conducted on the same evening within a short amount of time by the same officer. And the second stop involved the use of a drug dog. And Mr. Baker's claim here is that rather than diligently pursue the traffic mission of that speeding stop, the officers instead took time to talk about, prepare for, facilitate, and eventually run a drug dog sniff detouring from that mission in violation of Rodriguez. And I'll note that on appeal, Mr. Baker's claim has both factual and legal components. The government has not tried to defend the district court's fact-finding here. And if I'm understanding the answer brief correctly, it appears to agree that the purpose of the deputy's actions shortly before and during the drug dog sniff was for criminal investigation. Well, how much of the stop was prolonged? Sure. So the detour we've identified here is a minute and 10 seconds long. 10 seconds? A minute and 10 seconds, Your Honor. And of course, we know from Rodriguez and this court's decisions in Frazier, Vitar Molina, Mayville, a number of other cases, there's no de minimis exception to this rule. So where does that come from? Is it unfair to police officers? No, it's not. Because what we're ultimately asking here is, is there an amount of time where officers can detain somebody? Did Mr. Baker ever come up with his registration or his insurance certification? So Deputy Lloyd has all of the documents he needs in the second stop. There's no indication that he's waiting on Mr. Baker to provide any documentation. During the first stop, there's an indication that he doesn't have exactly the rental agreement available. He didn't have the rental agreement or the insurance. Because it was a warning, they just said, OK, go on. And the guy went and speeded off. Yeah. So I want to be clear that this doesn't present a Cates or Malone issue. We're not challenging the first traffic stop, but in the first traffic stop. No, I understand that. But I mean, he left. He got his warning ticket. And then instead of taking the warning, he speeded up again and was going well over the speed limit at the time he was stopped the second time. So now he's got to produce the insurance certification as well as the rental information. Your Honor, there's no indication here that Deputy Lloyd was not satisfied with the documentation that Mr. Baker provided him in the second stop. What happens is Deputy Lloyd walks up to Mr. Baker's vehicle for the second time. He asks him for documents. Mr. Baker hands him his license. I'm not sure what else. But Deputy Lloyd says, OK, thanks. Walks back to the patrol vehicle to start working on the speeding citation alone. There's no indication. He didn't get all the way back before he turned around and brought Baker out of the car. He didn't make his way into the patrol vehicle. He'd walked almost the whole distance back to the patrol vehicle. And then Deputy Coxville arrives on scene with Champ. You can see him in the video pulling on the lead. And Deputy Lloyd turns around and he says, oh, do you want me to get him out of the vehicle? Deputy Coxville says, yes. Also had them roll up the windows of his vehicle, clearly saying, these actions that you're about to take are done to facilitate my drug dog sniff to make it safer. That's what it's facilitating, is the safetiness. The safetiness of the drug dog sniff. But if the drug dog sniffer, that deputy, were endangered walking around this car in darkness, wouldn't the other officer also be endangered? In other words, if it turns out that this is a person with drugs who may be as high and has a firearm under the seat and shoots the first deputy, I'm going to just waive it, the second deputy. So a few points there, Your Honor. One is I think when we're talking about the safety of the drug dog sniff, the evidence indicates that the deputies are worried about the safety to Mr. Baker from having an apprehension dog who might bite him. It's part of it. Secondly, if the deputy's criminal investigation is what is prompting any danger in the stop and it didn't exist until they're bringing a drug dog to the scene and they're taking some time to execute the drug dog, then this is a safety precaution taken to facilitate the criminal investigation that comes from the criminal investigation. And Rodriguez is very clear on this point. It is not OK to extend a stop for any amount of time if the reason you're doing it is to make a criminal investigation safer. But you can run a dog around so long as you're not prolonging the stop. That's correct. And so had the first deputy gone to the window and said, get out of the car, and then during the suppression hearing said, yeah, I went and got him out of the car except for the drug. I knew the drug dog was going around and that heightened safety concerns for everyone on the roadside. Would you still have an objection to that? Yes, I think this gets to, if I'm understanding your question correctly, it's still assuming that there's an exit order that's only being taken because of a drug dog. So, yes, the bias tells us if you don't add any time at all to the stop, you can run a drug dog, but you can't add any time to the stop to do it. And the ways you can do it without adding time to a stop are to have it be offset by what the other officer is doing. We don't have that here because the other officer is working on the stop. Or something the driver is doing. In that case, we don't have that here. Deputy Boyd has the information he needs from Mr. Baker. I guess my question was going to this, and I thought I knew the answer, which is that just because a dog is being run around the car simultaneously, doesn't mean that the first deputy can't order, the briefs say order, but ask the person to get out of the car. Is that right? It depends on the purpose for which that other deputy is doing it. You think that's a subjective test, whether you can order or ask a driver to get out of the car? I think that a purpose-forward inquiry as the Supreme Court and this court does it has both objective and subjective components. Yes, I don't think it quite matters here because all of the evidence, however you look at this, the circumstances of the stop or the deputies' candid testimony about why they took these actions, show that this exit order, the window roll-up order, the conversations the deputies have before any of this, is about the drug dog sniff and not about the traffic violation. How do we know that? Well, we have a really great test case with Traffic Stop 1 where Deputy Lloyd, the same officer, the same night, the same car— Different danger, though. Sure. To both deputies. We can presume that, but we know that it's not Deputy Lloyd's practice to do this in a traffic safety context. We have Deputy Lloyd himself aware that Deputy Coxville's coming because he's called for him on the 50 miles before he pulls over the second stop. We have Deputy Lloyd himself going up to the vehicle, getting Mr. Baker's license, and making the decision to walk back to his patrol vehicle alone to issue the speeding warning, knowing that Deputy Coxville— It couldn't have been a minute and 10 seconds when he turned around and made him get out of the car. That was just many seconds. So, two points there, Your Honor. The minute and 10 seconds, just to clear up the evidentiary piece of this, we're counting from the moment Deputy Lloyd switches what he's doing, so he's walking to his patrol vehicle with Mr. Baker's license. He switches what he's doing, talks to Deputy Coxville, issues the exit order and the window roll-up order, and walks— Well, he didn't stop and talk to that other officer. That was in passing. He said, should I get him out? Yes. So, he's already passed Deputy Coxville. Well, he didn't stop and have a conference. That whole walk back, it takes about 20 seconds to walk back from the patrol vehicle to Mr. Baker's vehicle. And I do want to point out here, the government hasn't, I think, disputed the evidentiary issue of how much time these actions took. Yeah, they could. It's in the video evidence. And I can point to pin sites in the briefing. But the other thing is, I think there's this underlying concern about, is this too brief to violate Rodriguez? Well, suppose he looked down and, oh, my gosh, my shoelace is untied. So, he bends down and ties his shoelace. And then gets back up and keeps going. Is that also going to extend the prolonged— That does not violate Rodriguez, Your Honor. And let me explain why. Because this test isn't out to get police officers and trick them up because they tied their shoelaces. What we know is that the overall standard here is one of reasonableness. But that means something different when you're talking about an unlawful criminal investigation versus general diligence of your child. There's nothing unlawful about taking the dog and walking around the car with it. There's something unlawful about detaining someone for the sole purpose of a criminal investigation. What Cabaya says is you're not being detained during that time period for a criminal investigation. You're being detained for a traffic stop. And there's another officer who was conducting a drug dog sniff. But the moment the only reason for your detention, however long it is, 10 seconds, 2 minutes, 5 minutes, the moment that's only for criminal investigation, that violates the Fourth Amendment. And this goes all the way back to Terry. This is not a new principle. I think we're probably all on the same page that an officer couldn't detain someone on the street, do a stop and frisk as long as they kept it under 30 seconds. It would obviously be unreasonable. Is there a single moment where you say, right here is where we have our Rodriguez violation. I don't care what else happens afterwards. This stop is bad. Yeah. I think it's when the deputies have a conversation about what Deputy Coxville needs to facilitate the drug dog sniff. And this court can stop there. OK. And that really gets to the heart of what I need to know. Sure. To decide this case. And that is, I'm not sure I'd buy that view. Because I read Rodriguez and I read Frazier. And they talk about the amount of time that reasonably should have been needed to complete the stop. This traffic stop was never completed. Because the drug dog alerted. There are no citation issues so far as I know. But it immediately went to another focus. Why should we not be asking, even giving you a minute and 20, which I think is generous. But I might be persuaded on that. Even giving you that minute and 20, and saying that, why don't we run the clock at that point to say, could the first deputy have gone into the car, written out the citation, everything. Would it have taken him more than a minute and 20 seconds to do so? And if so, the stop is good. That's not the inquiry that this court has already implied in Frazier. And so the answer is, I think, Frazier, you have in the middle of the traffic stop, the deputy taking some time aside to arrange for a drug dog sniff. And what Frazier says is, the reason that's wrong is because it added time to the stop. There's no kind of subtraction analysis. There's no overall duration analysis. There's the moment you have a Rodriguez moment, when these three conditions are met that are outlaid in Frazier. That is when the stop becomes illegal, and it remains illegal from that point forward. And that's a Frazier quote. And looking at Frazier, right now, it tracks the language in Rodriguez on that would have been completed. In other words, it doesn't say we have a Rodriguez moment all after that is irredeemable. It looks forward, and it says, you used some time here that you shouldn't have been allowed to use. But because the stop didn't end, and you would have completed it within the amount of time, you're good. Respectfully, Your Honor, I don't think this court undertakes that analysis in Frazier. If you go to page 1173. Let me just read you what I'm talking about, and then you can tell me your page is better, and I'll probably get that. Thus, the government must show not only the search occurred during a period when Mr. Frazier would have been seized. Anyway, it must show that the stop would not have ended sooner had the trooper foregone the search and instead continue to work diligently on traffic-related tasks. That to me says, you look and you say, in our instance, would the trooper have been able to write that citation in a minute and 20 seconds using your number? Your Honor, the Frazier court doesn't do that type of time analysis in this opinion. But more importantly, it says, under Rodriguez, it makes no difference whether an investigative detour occurs before or after the completion of the stop's traffic-based mission. That's page 1180. But Rodriguez is so much different because it's one officer. It's different. And the dog is run after the stop is completed. Here you have two things in motion at the same time. Let's take the practical impact of what Your Honor is suggesting here. It's basically saying, to have that rule would basically be to say, every time you have a traffic stop, the police can start with a really quick criminal investigation that they have no reasonable suspicion to conduct as long as they make it really fast. They can run that dog without any suspicion whatsoever. Only if it's offset by traffic tasks. It cannot add time. There's no instruction under the Fourth Amendment. Using your hypothetical, if two offices, one doing the ticket, one running the dog, there is no problem there with running the dog. Yes, because that's a question of, was that too much of an intrusion on the driver? What we're asking in Rodriguez is a duration claim, which is, did you add time to the stop for a criminal investigation? You don't add time to the stop. And the answer is no. If you just say to your buddy who's got the dog, should I pull him out of the car? Your Honor, respectfully, that's not what this court has already decided in Frazier. It's not what this court has said in Cortez. It's not what the Supreme Court says in Rodriguez. Rodriguez is very clear. It doesn't matter if the ticket's complete or not. I know in that case it was. But Rodriguez says that's not what matters. What matters is, are we allowing, contrary to the teachings of Terry, officers to take an amount of time solely for the purpose of criminal investigation because they have done a traffic stop? And the answer has to be no there. And I would point this court to Frazier, which is saying, arranging for a dog sniff, calling up a deputy and saying, I need a drug dog here, is absolutely impermissible under Rodriguez. Well, that didn't happen here. That did not happen here. There is a preparation. You have two deputies having a conversation. What is required for this drug dog sniff? What's required for the drug dog sniff is for Mr. Baker to be safely removed from the vehicle and for the windows to be rolled up. That is a conversation of preparation for drug dog sniff in which no other traffic tasks are happening. And that has to be impermissible under Rodriguez because otherwise this would be counter to Terry. Thank you, Your Honor. Thank you. May it please the court. Counsel. My name is Christine Martins and I represent the government. Here, Mr. Baker's Fourth Amendment rights were not violated during the traffic stop that evening because the stop was not extended within the meaning of Rodriguez. And that's true for two reasons. First, as a matter of law, officers are entitled to ask both the driver and passenger out of the vehicle during the course of a lawful traffic stop and their subjective motivation for doing so is irrelevant to the analysis under the Fourth Amendment. And second, as a factual matter, there was no delay and the district court did not err in so finding. So I think that most of the questions so far have really talked about how Rodriguez deals with that delay. How do you say there was no delay? I don't understand that. So here, Your Honor, what we have is the officer exercising the choice between two perfectly permissible options under the Fourth Amendment, leaving Mr. Baker in the car or getting him out. But he didn't do that. He left the car, walked back, then came back. Why isn't that a delay? I agree with you that if at the very moment that he went up to the car the second time he said, Would you please get out of the car? And there was that discussion that that's fine. But that didn't happen. He walked back and then he conversed and then he went back to the car. That wouldn't happen without a second investigation. It may or may not have. Well, it wouldn't have here. Yeah, it wouldn't have happened here. But there's really two parts to that answer. First, this court has repeatedly said that officers just need to be diligent. They don't have to be perfectly efficient or use the most efficient means to complete a track and stop when they are just running through those regular tasks. And then the second part of that answer really goes to this question with regard to ren, motivation, and pretext. Any action taken at a traffic stop just has to be objectively reasonable under the Fourth Amendment. And so here, if we ignore the audio, if we ignore the testimony about purpose at the suppression hearing, ignore the pretext, what we see on that video is an officer taking 20 seconds to reconsider his choices. And those choices, again, are between two perfectly permissible options under the Fourth Amendment. Leave the driver in the vehicle or get him out. Well, what if we spot you the order for the driver to get out of the vehicle? How do you explain the order to roll up the window and the time it took for that to happen, even if it's de minimis? Well, once Deputy Lloyd orders Baker to exit the video, then he's just waiting on Baker's compliance with that lawful order. And anything that's running parallel to that is just that, parallel. Essentially, it stops the clock, kind of like a speedy trial analysis. That request to roll up the window came after. And it's notable here that— No, but it's a separate request. Yes. I need you to do two things. Get out of the vehicle. When you issue the order, of course it's going to take some time for that to be executed. So, again, let's say we spot you that that's appropriate. But the order to roll up the window, at least as I see it, may be different than what the officer can do between two lawful choices to have someone exit the vehicle. And when that order is issued, it's going to take some time for the person to actually roll up the window, right? So, how do you factor that different, separate order into our analysis whether or not that was done as two lawful choices as you've presented them? So, here what we see when we review the video is Deputy Lloyd is approaching the vehicle on the passenger side. And it's the passenger window that is rolled down. And it's the passenger who is sitting right there. Baker's in the driver's seat. So, as a factual matter, when that order is issued, Baker's not the one who would be rolling up that window. He would have to crawl over the passenger to do so, which just logistically doesn't make sense. So, what happens is Deputy Lloyd orders the driver out and requests that the passenger roll up the passenger window while the driver is complying. So, that's why I say it doesn't add any time to the stop. It doesn't take any time for Mr. Baker to add to his compliance. There's a few seconds that Mr. Baker takes when he stands up and he gets out of the vehicle. And he's sort of standing alongside the car. And he leaves his door open. And the deputy talks about things like, well, shut your door. We don't want it to be taken off by traffic. That's all about compliance with that lawful order and safety and compliance with that order, which doesn't count against the deputies in their diligent execution of this traffic stop. And I think that I'd also sort of like to pick up on some of the hypotheticals that were discussed with the Defendant's Counsel. So, when we talk about what we're looking at for Rodriguez, even though Rodriguez talks about it's impermissible to take officer safety precautions in order to facilitate any suspicionless investigation, I think that it's really important to really think about how Rodriguez deals with MIMS and the discussion there. So, Rodriguez deals with MIMS only insofar as it points out that the Eighth Circuit got the analysis wrong. Essentially, what the Eighth Circuit had said below was that there's this interswaying analysis and de minimis extensions of a traffic stop are okay. But what Rodriguez says is that's not the case. We can't do de minimis extensions. But it doesn't touch that per se rule established by MIMS and Wilson that exit orders are lawful regardless of any particular suspicion of dangerousness, without suspicion of any criminal wrongdoing aside from the presumably minor traffic infraction that's the basis for the stop. So, really, Rodriguez leaves that intact. And there's nothing in those statements of purpose that call into question the well-established case law about that subjective motivation, the officers underlying intentions in taking otherwise objectively justified actions under the Fourth Amendment. So, here, again, those principles being in play, it was a lawful exit order, and that it wasn't perfectly executed logistically is of no moment because it's really just about that objective choice between two lawful options. It's not like the deputy here stood idly by, which supports the idea that on this record there was no factual error, that there was no delay or any lack of diligence by the officers. So, I'm sure I understand. You're saying the officers' subjective motivations for requesting the driver get out of the car matter or don't matter? They do not matter. They do not matter. And, you know, in taking up some of the hypotheticals, I think that it's helpful also to talk a little bit about what Judge Phillips, you pointed out. Rodriguez says that the authority for a traffic stop ends when the tasks related to that stop are or should have been completed. Now, here, the dog alerts about three minutes into the video. When we watch that video, what we see is it takes 45 or 50 seconds from the moment the lights come on on the patrol vehicle triggering the video to fully get pulled over and for Deputy Lloyd to approach the passenger side of the vehicle. And so, the stop itself starts, you know, in terms of the interactions with Baker, 45 or 50 seconds into the video. So, really, there's only about two minutes, give or take a few seconds, of activity that occurs at this traffic stop before the drug dog alerts. What we have in this record is the video from the first stop, and that's going to be government's exhibit number two before this court. If we do sort of a similar look at that first stop where Deputy Lloyd did not pull Mr. Baker out of the vehicle, what we see is he completes the warning in about 10 minutes. So, even if there is some, that impermissible diversion here, we don't concede there is, there's no way that the tasks incident to this traffic stop could have been completed by the time the drug dog alerted. So, that's yet another reason to affirm the District Court's denial of Mr. Baker's suppression motion. Now, of course, the District Court didn't get there because it held that there was no delay, so it had no necessity to really look at exhibit one, make a factual comparison to arrive at that delay question, but it's apparent on the face of this record. Counsel, can you help me? One of the things I struggle with is what makes this case somewhat different is there are the two stops by the same deputy all within, I think, an hour of each other. I think they said 50 miles, give or take, so I assume that was approximately an hour. And, as I recall, Deputy Lloyd testified that he intended to issue another warning for speeding. I think his words were, if everything checked out. But, of course, he knew everything checked out because he had just stopped them less than an hour before. So, even objectively, and let's say, again, setting aside as Wren teaches us we must do, what his purpose was, if we think about the duration and what was occurring here, how could you objectively conclude it was anything other than specifically for the purpose of a drug investigation and all the timing elements of at least a few of the activities were for that purpose, which case law would suggest would be there was a Rodriguez moment there. So, I think it's only fair to point out that below the government conceded that the stop itself is pretextual. Deputy Lloyd offered testimony that he wouldn't have even stopped Mr. Baker had he observed traffic violations before he had backup because he only intended to stop him if he could have backup so he could further his investigation. So, the stop itself is pretextual. So, if we're getting into those subjective motivations, the whole thing is pretext. Yeah, but you just said, well, we know the first stop took 10 minutes, so we can assume the second stop would take 10 minutes, too. But why would we make that assumption? Well, there's just certain things that officers, first of all, get to do incident to a traffic stop, license, registration, all of those kinds of things. And this is a second stop. All of that starts over. They get to do those tasks. And then when we get into the district court's order itself, there were specifically some findings about he approached the vehicle, asked for the information, he intended to take it back to his squad car because while there was information available in the computer, it was faster and easier for him to use those documentation items that he did get to fill out that citation, again, showing diligence in the execution of those traffic-based missions. So, here, I don't know that this court will necessarily want to make that factual finding in the first instance. I know it's loath to do so even when there is body camera available. Perhaps if we get to that second factual inquiry, a remand to the district court for that factual finding is the more proper answer. But at any rate, when you look at what it takes to type up the citation, do those sorts of things as evidenced from that first set of body cam, there's only about two minutes that go by. And I just don't think that on these facts we can conclude that the deputy could have even accomplished this warning if he had never turned back to issue the exit warrant. Do you have authority that says on a second stop in this sort of a time interval that they have time to run criminal history and check for warrants when they've already done that? Well, it's kind of a unique set of facts. And what we do have in terms of authority is that there's just those certain things that go with the traffic stop. So, you know, Rodriguez itself talks about you get to do those normal incidences to a traffic stop. And really all we're talking about here was that question of whether the officers were entitled to go get those documents. And we do have an explanation in the record about why that was actually the more efficient way to execute this traffic stop. And then what we're really left with on this record is this question about diligence in the exit order. That's per se. Is that right? The question was whether or not, I thought it was that's why he needed the driver's license and why it might have assisted him to have him in the car was so he could fill out the warning citation. Did the deputy need to speak with dispatch to fill out the warning citation? I think... I don't know why. Speak with dispatch. You're saying Rodriguez allows them to check criminal history and how do you do that? Well, driver's license status, that sort of thing. Normally they call dispatch and say is this driver's license good? Yes, Your Honor. And so second time around, I don't know why you would need that time to do that. All you need is the driver's license information. You fill out the citation and say here's your citation. Quit speeding. Agreed. Again, the deputy doesn't even get back to the car so there's no question about whether there's calling dispatch. He asked for the rental agreement at the first stop and with a lack of backup decided to let Mr. Baker go. I don't see any reason why he wouldn't be entitled to have persisted in the request for the rental agreement. But he didn't. But he didn't because so little time passed. They didn't even get back to the car so that they could do those tasks. Counsel, I believe earlier you said the window order was actually the passenger rolled up the window. It was done contemporaneous with the other activities so it would not have added any time. The district court finding of facts said Deputy Lloyd ordered the defendant to roll up the window. So how do we interpret that finding made by the district court compared to the argument the government made here tonight or today? Well, I don't know that it's a clearly erroneous finding but it seems impractical and what you see on the video is not Baker calling over the passenger. So maybe it is clearly erroneous in terms of the view of the record. But at any rate, that order is issued at the passenger side of the vehicle after the exit order. And the district court further found that there was no time added. So those findings would be in conflict with each other. I guess I haven't picked that up. If there are no further questions, the government requests that this be referred. Thank you. Ms. Jaffe, you can have two minutes if you want to. You have 27 seconds. I just have three points to make if there's time. The first is getting back to the timing issue of when a diversion matters. I just do want to point the court to Frazier at 1179 where it says the moment there's a Rodriguez moment, the stop is illegal from that point forward. That is a finding, a holding that this court has already made in a published 10th Circuit decision and that's the rule in this circuit. At minimum though, and I don't think there's any ground here, but at minimum I don't think the record supports that the inquiry that this court would need to take if that were not the rule, there would need to be a remand. Yes, Your Honor? How tight are we going to micromanage our policemen? We're not micromanaging them with respect to traffic. They're being shot at, killed, fentanyl is being spread everywhere and we're going to say, well, 12 seconds is too long. I completely respect where Your Honor is coming from and I just want to be really clear about the rule here. There is an inquiry for when an officer is conducting traffic tests, they have to be reasonably diligent and we are not going to say, hey, you took 12 seconds to tie your shoes, Rodriguez violation. The only time this de minimis rule comes up is when an officer is specifically doing something they don't have objective justification to do, which is conduct a drug investigation or conduct other criminal investigation. We're not talking about could you have written the citation faster? Should you have not tied your shoe? Whatever it is, that's not what Rodriguez is challenging here. Well, in this case, this defendant had never furnished insurance certification or registration. Again, Your Honor, the record shows that Deputy Lloyd asked for... He may have waived it the first time, he wasn't going to waive it the second time. Your Honor, Deputy Lloyd did not ask Mr. Baker to continue looking for any documentation. He accepted that he had the license and he had already run all the checks he needed to know, to know that Mr. Baker had a valid license, that he didn't have any outstanding warrants, and even that the rental agreement was valid because he was able to get that information. So then he should have done it really faster than the first time. No, the inquiry here, Your Honor, is simply did the officers take time to investigate criminal investigation or criminal activity without reasonable suspicion to do so? And if they did, and that added any measurable amount of time, then the stop is illegal from that point forward under Frazier 1179. Thank you, Your Honor. Thank you, counsel, for your helpful arguments. The case is submitted. Counsel are excused.